UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DENISE CARDWELL,

                                        Plaintiff,

                    - against -                         09 Civ. 7809

THERMO FISCHER SCIENTIFIC,                              (DAB) (JCF)

                                        Defendant.

# MEMORANDUM OF LAW IN SUPPORT OF
# MOTION TO DISMISS BY DEFENDANT
# THERMO FISHER SCIENTIFIC

**NIXON PEABODY LLP**
50 Jericho Quadrangle, Suite 300
Jericho, New York 11753-2728
(516) 832-7500

*Attorneys for Defendant*
*Thermo Fisher Scientific Inc.*

Of Counsel:
        Tara Eyer Daub, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .......................................................................................1

STATEMENT OF FACTS ...........................................................................................4

STANDARD OF REVIEW ..........................................................................................11

ARGUMENT ..........................................................................................................13

    POINT I

        PLAINTIFF HAS RELEASED AND WAIVED ALL
        CLAIMS AGAINST DEFENDANT INCLUDING
        ALL CLAIMS ASSERTED IN THIS ACTION ...........................................13

    POINT II

        PLAINTIFF'S SECTION 1981 CLAIM BASED
        ON THE DEFENDANT'S REQUIREMENT
        THAT SHE SIGN THE NON-COMPETITION
        AGREEMENT IS TIME-BARRED ...............................................................17

    POINT III

        PLAINTIFF'S TORTIOUS INTERFERENCE
        WITH CONTRACT CLAIM IS UNTIMELY ...............................................18

CONCLUSION..........................................................................................................19

12881645.1

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009) ......................................................................................11

Brass v. American Film Techs, Inc.,
987 F.2d 142 (2d Cir. 1993).............................................................................12

Buller v. Giorno,
28 A.D.3d 258 (1st Dep't 2006) ......................................................................18

Calif. Pub. Employees' Ret. Sys. v. N.Y. Stock Exch. Inc.,
503 F.3d 89 (2d Cir. 2007), cert. denied, 128 S. Ct. 1707 (2008) ....................4

Cordoba v. Beau Dietl & Assocs.,
2003 U.S. Dist. LEXIS 22033 (S.D.N.Y. Dec. 8, 2003) ..................................15

Falso v. Churchville Cili Central School,
2009 U.S. App. LEXIS 13357 (2d Cir. Jun. 23, 2009) ....................................11

Gant v. Brooklyn Dev. Ctr.,
307 A.D.2d 307, 762 N.Y.S.2d 507 (2d Dep't 2003) ......................................17

Harris v. Mills,
572 F.3d 66 (2d Cir. 2009).............................................................................11

In re MSC Indus. Direct Co., Inc. Sec. Litig.,
283 F. Supp. 2d 838 (E.D.N.Y. 2003) .............................................................12

In re Time Warner, Inc. Sec. Litig.,
2007 U.S. Dist. LEXIS 45037 (S.D.N.Y. June 20, 2007).................................11

Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,
32 F.3d 697 (2d Cir. 1994)................................................................................4

Jones v. R.R. Donnelly & Sons Co.,
541 U.S. 369 (2004).........................................................................................17

Lambertson v. Kerry Ingredients, Inc.,
50 F. Supp. 2d 163 (E.D.N.Y. 1999) ...........................................................15, 16

Laramee v. Jewish Guild for the Blind,
72 F. Supp. 2d 357 (S.D.N.Y. 1999)................................................................16

12859889

Livingston v. Bev-Pak, Inc.,
    112 F. Supp. 2d 242 (N.D.N.Y. 2000) ...................................................................16

Matusovsky v. Merrill Lynch,
    186 F. Supp. 2d 397 (S.D.N.Y. 2002) ...................................................................16

Pampillona v. RJR Nabisco, Inc.,
    138 F.3d 459 (2d Cir. 1998) ..................................................................................16

Pujol v. Universal Fidelity Corp.,
    2004 U.S. Dist. LEXIS 10556 (E.D.N.Y. June 9, 2004) .......................................12

Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.,
    2005 U.S. Dist. LEXIS 9772 (S.D.N.Y. May 20, 2005)........................................12

Savino v. Lloyds TSB Bank, PLC,
    499 F. Supp.2d 306 (W.D.N.Y. 2007) ..................................................................11

Sheridan v. The McGraw-Hill Companies,
    2001 U.S. App. LEXIS 25197 (2d Cir. Nov. 30, 2001).........................................16

Skluth v. United Merchants & Mfrs., Inc.,
    163 A.D.2d 104, 559 N.Y.S.2d 280 (1st Dep't 1990) ..........................................16

Thome v. The Alexander & Louisa Calder Fdn.,
    890 N.Y.S.2d 16 (1st Dep't 2009) .........................................................................18

# PRELIMINARY STATEMENT

Defendant Thermo Fisher Scientific Inc. ("Defendant") (incorrectly named in the Complaint as "Thermo Fischer Scientific") submits this memorandum of law in support of its motion pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing the Complaint in its entirety. Plaintiff's claims for breach of contract, tortious interference with contract, and discrimination in violation of 42 U.S.C. § 1981 ("Section 1981") should be dismissed as a matter of law.

Plaintiff Denise Cardwell ("Plaintiff") asserts claims against Defendant, her former employer, arising out of a non-disclosure and non-competition agreement she signed upon being hired in October 2004 (the "Non-Competition Agreement") and based on the elimination of her position in October 2008. Plaintiff's position was eliminated due to a lack of continuing work in New York.

Defendant seeks dismissal of Plaintiff's Complaint on the grounds that all of Plaintiff's claims have been released. Specifically, in exchange for receipt of a severance package, Plaintiff signed a valid separation and release agreement with Defendant following her termination on October 13, 2008 (the "Separation and Release Agreement"). The Separation and Release Agreement contained a general release of all claims, including all claims arising from her employment or otherwise, "whether known or unknown" and "based upon, arising out of or in connection with any circumstance, matter or state of fact up to the date of [the] agreement." All of Plaintiff's claims arise from facts and circumstances existing prior to October 13, 2008 and have been released.

Plaintiff's Complaint is a confused and tangled string of conclusory allegations. Nevertheless, based on any reading of the Complaint, it is clear that two of Plaintiff's claims arise from Defendant's decision to eliminate her position prior to October 2008. First, Plaintiff

alleges that her position was eliminated based on racial discrimination in violation of Section 1981. (Complaint at ¶ 8.) Second, Plaintiff alleges that her termination breached unspecified terms of the Non-Competition Agreement. (Complaint at ¶ 7.) Obviously, there is no dispute that Defendant's decision to eliminate Plaintiff's position occurred prior to her termination on October 13, 2008. As a result, Plaintiff's claims arising from her termination have been released and must be dismissed.

In addition, Plaintiff's Complaint asserts two claims arising from the Non-Competition Agreement she signed upon being hired in October 2004, which restricted her from working for Defendant's competitors during her employment and during the 12-month period following her termination. Specifically, Plaintiff's third claim alleges that Defendant's action in requiring her to sign the Non-Competition Agreement was racially discriminatory in violation of Section 1981, because unidentified "white employees" who worked in similar positions allegedly "were not subject to the same restrictions." (Complaint at ¶¶ 5, 13.) Plaintiff's Section 1981 claim clearly arises from the terms of the Non-Competition Agreement she signed in October 2004. Accordingly, Plaintiff released this claim when she signed the general release following her termination in October 2008. Moreover, this claim is time-barred under the four-year statute of limitations applicable to Section 1981 claims.

Finally, Plaintiff's fourth claim alleges that Defendant engaged in tortious interference with contract by having "falsely claimed" that Plaintiff had sufficient knowledge to "trigger" the Non-Competition Agreement. (Complaint at ¶ 11.) Under the terms of the Non-Competition Agreement signed in October 2004, Plaintiff specifically acknowledged that she had "knowledge and access to Proprietary and Confidential Information," as defined therein. (Non-Competition Agreement, p. 3) Now, almost six years after signing the Non-Competition Agreement and

expressly acknowledging her access to such information, Plaintiff alleges that Defendant's requirement that she sign this allegedly "false" or "falsely expanded" acknowledgment constituted tortious interference with contract, because the Non-Competition Agreement interfered with Plaintiff's "ability to contract with competitors of the [D]efendant." (Complaint at ¶¶ 11, 12, 13.) Plaintiff alleges that the Defendant engaged in this interference "in order to unlawfully [obtain] a competitive advantage." (Id. at ¶ 15.) Once again, Plaintiff signature of the Separation and Release Agreement released this claim, which arises from the Non-Competition Agreement she signed as a condition of employment in October 2004. Plaintiff's tortious interference with contract claim is also time-barred under the applicable three-year statute of limitations period.

Significantly, Plaintiff does not allege that Defendant, or any of its employees, made a false statement to any potential employer during or after her termination regarding the contents of the Non-Competition Agreement or otherwise. To the extent that Plaintiff believed the Non-Competition Agreement should be held legally unenforceable for any reason, she had the option to either (1) file an action seeking a declaratory judgment that the Non-Competition Agreement was unenforceable; or (2) if she obtained employment with a competitor, Plaintiff could defend against a breach of contract claim by asserting that the Non-Competition Agreement was unenforceable. Despite these options, Plaintiff and her attorney declined to litigate the enforceability of the covenant. That issue became moot long ago, since the non-competition period expired on October 13, 2009, three months before the Complaint in this case was served. Having sat on her right to litigate the enforceability of the Non-Competition Agreement for almost six years, Plaintiff cannot now use an anti-discrimination statute or tort claim to pursue "damages" allegedly resulting from her compliance with a binding contractual obligation.

For all of these reasons, as set forth more fully below, Defendant's motion to dismiss Plaintiff's Complaint in its entirety should be granted.

## STATEMENT OF FACTS[1]

For purposes of this motion only, there is no need to dispute the allegations of the Complaint, which are briefly summarized below for the Court's convenient reference.

**Plaintiff's Hire in October 2004 Subject to**
**the Terms of a Non-Competition Agreement**

Plaintiff was hired by Defendant in or about October 2004 as a Project Manager. (Complaint at ¶ 3.) Plaintiff's hiring, and her continued employment, were conditioned upon her execution of an Agreement Relating to Intellectual Property, Confidential Information, Conflicts of Interest, Competitive Activities and Release. A copy of the Agreement Relating to Intellectual Property, Confidential Information, Conflicts of Interest, Competitive Activities and Release is attached to the accompanying Declaration of Tara Daub ("Daub Decl.") at Exhibit B ("Non-Competition Agreement"). Plaintiff signed the Non-Competition Agreement on October 12, 2004. (Id., p. 1.)

Under the terms of the Non-Competition Agreement, Plaintiff acknowledged that she would be provided with knowledge and access to Defendant's "Confidential and Proprietary Information" (as defined therein), as necessary to assist her in the performance of her job responsibilities. (Id., p. 3.) In fact, the section of the Non-Competition Agreement entitled "Obligations of Employee During and After Employment," specifically states:

---

[1]    In reviewing a Rule 12(b)(6) motion, the Court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697, 699-700 (2d Cir. 1994). Nevertheless, the Court "need not accord [l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness.'" See Calif. Pub. Employees' Ret. Sys. v. N.Y. Stock Exch. Inc., 503 F.3d 89, 95 (2d Cir. 2007) (internal quotation marks, citation, and alteration omitted), cert. denied, 128 S. Ct. 1707 (2008).

>Employee acknowledges and agrees that he or she has and will have knowledge and access to Proprietary and Confidential Information and responsibilities relating to most, if not all, aspects of the business of the Employer in all of the territories and geographical areas covered by Employer's business operations. Employee further acknowledges and agrees that this knowledge will qualify Employee as a potentially formidable competitor throughout the territories and geographical areas covered by Employer's business operations.

(Id., p. 3.) This acknowledgment is similarly reiterated in the section entitled "Nondisclosure of Proprietary and Confidential Information," as follows:

>I further acknowledge and agree that, during the course of my employment with Employer, I will continually be provided with and will have access to Proprietary and Confidential Information and that the unauthorized use or disclosure of any such Proprietary and Confidential Information at any time would constitute unfair competition with Employer.

(Id., p. 5.)

To protect Defendant's Proprietary and Confidential Information, the Non-Competition Agreement also includes a non-competition clause, entitled "Employee's Agreement not to Compete with Employer." Specifically, the terms of the non-competition clause provide, in relevant part:

>I acknowledge and agree that during the term of my employment with Employer, and for a period of twelve (12) months thereafter, I will not directly or indirectly, engage, participate, invest in or be employed by any business, entity or person which competes with Employer . . . within the Restricted Area . . . .

(Id., p. 8.) Plaintiff specifically acknowledged the reasonableness of this limited restriction on competition in light of her duties. (Id., p. 9.) Plaintiff also acknowledged that she had "knowledge, skills and capabilities" that would enable her to obtain subsequent employment in business activities of a "different and non-competing nature" than those performed in the course of employment with Defendant. (Id.)

Plaintiff executed the Non-Competition Agreement on October 12, 2004, acknowledging that she had read and accepted all the terms therein. (Id., p. 12.) Indeed, the following acknowledgement is emphasized in capital letters directly above her signature:

> I ACKNOWLEDGE AND AGREE AND I HEREBY REPRESENT AND WARRANT THAT I AM OF FULL AGE AND HAVE EVERY RIGHT TO CONTRACT IN MY OWN NAME IN THE ABOVE REGARD. I FURTHER ACKNOWLEDGE AND AGREE AND REPRESENT THAT I HAVE CAREFULLY READ THE ABOVE AGREEMENT AND HAVE BEEN GIVEN A FAIR OPPORTUNITY TO NEGOTIATE THE TERMS OF THE AGREEMENT PRIOR TO MY EXECUTION OF THE SAME, AND THAT I AM FULLY FAMILIAR WITH THE CONTENTS HEREOF AND THEREOF. I HAVE NOT BEEN INFLUENCED TO SIGN THIS AGREEMENT BY ANY STATEMENT OR REPRESENTATION BY THE EMPLOYER NOT CONTAINED IN THIS AGREEMENT AND I ENTER INTO THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.

(Id., p. 12.)

### Plaintiff's Receipt of Severance Benefits Subject to the Terms of a Separation and General Release Agreement

In or about October 2008, Defendant eliminated Plaintiff's position. (Complaint at ¶ 5.) As a result, Plaintiff's employment was terminated effective October 13, 2008. (Id.) On Plaintiff's final day of employment, Defendant offered her a severance package, conditioned upon her signature of a separation and general release agreement. (Id.) A copy of the letter agreement dated October 13, 2008, is attached to the accompanying Daub Declaration at Exhibit C ("Separation and Release Agreement").

Under the terms of the Separation and Release Agreement, Plaintiff was offered certain benefits, including, inter alia: (1) a severance payment equivalent to four weeks of her salary; (2) payment of unused vacation leave; and (3) the services of an outplacement firm to assist her in securing other employment, at no cost, for a one-year period after her separation. (Separation

and Release Agreement at ¶¶ 2, 3, 9.) As consideration for these benefits, the terms of the

Separation and Release Agreement required Plaintiff to agree to certain terms and obligations,

including, inter alia: (1) her agreement to a waiver and general release all claims against

Defendant; and (2) her agreement to comply with the terms of the existing Non-Competition

Agreement dated October 12, 2004. (Id. at ¶¶ 10, 15.)

**Plaintiff Released All Claims Against Defendant**

Following Plaintiff's termination on October 13, 2008, she executed the Separation and

Release Agreement in exchange for this substantial severance package. (Id., pp. 1-2, 12;

Complaint at ¶ 5.) As set forth in Paragraph 10 of the Separation and Release Agreement,

Plaintiff agreed to "unconditionally waive, release, acquit and forever discharge the Company . .

. from any and all claims, liabilities, damages, actions, causes of action and suits, whether known

or unknown . . . , based upon, arising out of or in connection with any circumstance, matter or

state of fact up to the date of this agreement," including but not limited to claims "arising out of

the termination of your employment and other relationships with the company" and including

any claims of "discrimination" under any "federal, state or local laws." (Separation Agreement

and Release at ¶ 10.)

The general release set forth in Paragraph 10 emphasizes the following notice and

acknowledgement, in capital letters:

> YOU UNDERSTAND THAT YOU HAVE BEEN ADVISED TO
> SEEK THE ADVICE OF AN ATTORNEY, IF YOU SO
> CHOOSE, PRIOR TO SIGNING THIS RELEASE AND TO THE
> EXTENT DESCRIBED HEREIN YOU ARE GIVING UP ANY
> LEGAL CLAIMS YOU HAVE AGAINST THE COMPANY . . .
> BY SIGNING THE RELEASE. YOU FURTHER
> UNDERSTAND THAT YOU HAVE 21 DAYS TO CONSIDER
> THIS AGREEMENT [AND] THAT YOU MAY REVOKE IT AT
> ANY TIME DURING THE SEVEN DAYS AFTER YOUR SIGN
> IT . . . YOU ACKNOWLEDGE THAT YOU ARE SIGNING

> THIS RELEASE KNOWINGLY, WILLINGLY AND
> VOLUNTARILY IN EXCHANGE FOR THE PAYMENTS AND
> BENEFITS DESCRIBED IN THIS AGREEMENT.

(<u>Id.</u>) As emphasized to Plaintiff in this notice and acknowledgement, Plaintiff released all

possible claims arising from any facts or circumstances through the date she signed the

Separation and Release Agreement following her termination on October 13, 2008.

**Plaintiff Reaffirmed Her Existing Non-Competition**
**Obligations Under the Separation and Release Agreement**

By signing the Separation and Release Agreement, in exchange for valuable

consideration, Plaintiff also reaffirmed her obligations under the existing Non-Competition

Agreement dated October 12, 2004. Specifically, Paragraph 15 of the Separation and Release

Agreement, entitled "Confidentiality/Noncompete Agreements," provided, in relevant part:

> You agree to comply with the terms of any agreement that you
> have previously signed relating to the confidentiality of Company
> proprietary information and inventions as well as any agreement
> relating to your post-termination noncompete obligations.

(<u>Id.</u> at p. 4.) The Non-Competition Agreement dated October 12, 2004, was attached to the

Separation and Release Agreement as Exhibit A.

Thus, upon signing the Separation and Release Agreement following her termination on

October 13, 2008, Plaintiff confirmed her agreement to the following acknowledgments and

obligations, among others:

> (1)   Employee acknowledges and agrees that he or she has and will
> have knowledge and access to Proprietary and Confidential
> Information and responsibilities relating to most, if not all, aspects
> of the business of the Employer in all of the territories and
> geographical areas covered by Employer's business operations.
> Employee further acknowledges and agrees that this knowledge
> will qualify Employee as a potentially formidable competitor
> throughout the territories and geographical areas covered by
> Employer's business operations. (<u>Id.</u>, p. 3.)

(2)    I further acknowledge and agree that, during the course of my employment with Employer, I will continually be provided with and will have access to Proprietary and Confidential Information and that the unauthorized use or disclosure of any such Proprietary and Confidential Information at any time would constitute unfair competition with Employer. (Id., p. 5.)

(3)    I acknowledge and agree that during the term of my employment with Employer, and for a period of twelve (12) months thereafter, I will not directly or indirectly, engage, participate, invest in or be employed by any business, entity or person which competes with Employer . . . within the Restricted Area . . . . (Id., p. 8.)

Therefore, Plaintiff agreed, once again, to comply with her existing non-competition obligations following her termination. Based on her termination date, the 12-month non-competition period continued in effect from October 13, 2008 through October 13, 2009, at which point her obligations expired.

**Plaintiff's Complaint Allegations**

In her Complaint, Plaintiff alleges that the Non-Competition Agreement she signed "included . . . terms under which [Plaintiff] could obtain employment from competitors." (Complaint at ¶ 6) (emphasis added). According to Plaintiff, the terms of the non-competition agreement were conditional and would be "triggered" only if she was given an undefined level of knowledge she refers to as "insider knowledge and information." (Id. at ¶ 11.) Neither the Non-Competition Agreement, nor the Separation and Release Agreement, contain such conditional language or terminology. Nevertheless, Plaintiff alleges that Defendant "falsely claimed" that she had such undefined "insider knowledge and information." (Id.)

Plaintiff does not allege that Defendant, or any of its employees, made a false statement to any potential employer before or after her termination regarding the contents of the Non-Competition Agreement or otherwise. Rather, Plaintiff's allegation of a "false claim" is apparently a reference to the clear and unambiguous terms of the Non-Competition Agreement

itself. Under the terms of that agreement, which Plaintiff signed in October 2004 and reaffirmed in October 2008, Plaintiff specifically acknowledged her "knowledge and access to Proprietary and Confidential Information," as defined therein. However, after accepting valuable consideration in exchange for her covenant not to compete, Plaintiff now alleges that her acknowledgement was "false" or "falsely expanded." (Id. at ¶ 11.)

As a result of her obligations under the Non-Competition Agreement, Plaintiff alleges that she was unable to obtain employment with "Defendant's competitors." (Id. ¶¶ 12, 14, 15.) Specifically, Plaintiff alleges that she unsuccessfully sought employment with one of Defendant's competitors in or about Spring 2009. (Id. at ¶ 12.) As discussed above, the 12-month non-competition period remained in effect only from October 13, 2008 through October 13, 2009. At no time, during or after the non-competition period, did Plaintiff commence an action seeking a declaratory judgment that the Non-Competition Agreement was unenforceable for any reason. Instead, Plaintiff waited until January 7, 2010, to serve her Complaint in this action, alleging that the Defendant's requirement that she sign the Non-Competition Agreement as a condition of employment was racially discriminatory in violation of Section 1981 and constituted tortious interference with contract because it prevented her from obtaining employment with Defendant's competitors.

Plaintiff also alleges that the decision to eliminate her position prior to October 2008 constituted a breach of unspecified terms of the Non-Competition Agreement. In addition, Plaintiff alleges that her position was eliminated based on racial discrimination in violation of Section 1981.

## STANDARD OF REVIEW

The "touchstone for a well-pleaded complaint under Federal Rules of Civil Procedure 8(a) and 12(b)(6) is plausibility." In re Time Warner, Inc. Sec. Litig., 2007 U.S. Dist. LEXIS 45037, at *6 (S.D.N.Y. June 20, 2007) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1968 (2007). For a plaintiff's claim to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' See Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) (quoting Twombly, 127 S. Ct. at 1974).

Although a complaint attacked by a Rule12(b)(6) motion "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Savino v. Lloyds TSB Bank, PLC, 499 F. Supp.2d 306, 310 (W.D.N.Y. 2007) (quoting Twombly, 127 S. Ct. at 1964). Indeed, Fed. R. Civ. P. 8 (a) (2) demands more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." Falso v. Churchville Cili Central School, 2009 U.S. App. LEXIS 13357, at *2 (2d Cir. Jun. 23, 2009) (quotations omitted). Instead, a plaintiff must present a "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss. Id. A claim is "facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, at 1949 (emphasis added); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.") (citations omitted).

Furthermore, it is well settled that a complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by

reference, as well as public disclosure documents and "documents that the plaintiff either possessed or knew about and upon which [she] relied in bringing the suit." Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ., 2005 U.S. Dist. LEXIS 9772, *24 (S.D.N.Y. May 20, 2005) (quoting Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)); Pujol v. Universal Fidelity Corp., 2004 U.S. Dist. LEXIS 10556, at *3 (E.D.N.Y. June 9, 2004). Thus, when deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents attached to the complaint as exhibits or incorporated in it by reference. See Brass v. American Film Techs, Inc., 987 F.2d 142, 150 (2d Cir. 1993); In re MSC Indus. Direct Co., Inc. Sec. Litig., 283 F. Supp. 2d 838, 845 (E.D.N.Y. 2003) (holding the "Court must confine its consideration to . . . . documents appended to the complaint or incorporated in the complaint by reference").

Here, the Non-Competition Agreement and the Separation and Release Agreement are both incorporated by reference to the Complaint. Plaintiff's Complaint specifically refers to the Non-Competition Agreement by its full title (i.e., the "Agreement Relating to Intellectual Property, Confidential Information, Conflicts of Interest, Competitive Activities and Release"). (Complaint at ¶ 5.) In addition, Plaintiff specifically refers to signing an agreement upon her separation which contained non-competition obligations. (Id. at ¶ 6.) Obviously, Plaintiff is in fact referring to the Separation and Release Agreement (i.e., the untitled letter agreement dated October 13, 2008, to which the Non-Competition Agreement dated October 12, 2004, was attached as Exhibit A). (Separation and Release Agreement, p. 6.) Therefore, reliance on these documents as the basis for Defendant's motion to dismiss does not transform the motion into one for summary judgment.

For all the reasons discussed herein, Plaintiff's Complaint should be dismissed in its entirety.

**ARGUMENT**

**POINT I**

**PLAINTIFF HAS RELEASED AND WAIVED
ALL CLAIMS AGAINST DEFENDANT INCLUDING
ALL CLAIMS ASSERTED IN THIS ACTION**

All four of Plaintiff's claims arise from facts and circumstances that clearly predate her signature of the Separation and Release Agreement following her termination on October 13, 2008. Each of her claims arises from facts and circumstances relating to either: (1) Defendant's requirement that she sign the Non-Competition Agreement in <u>October 2004</u>; or (2) Defendant's decision to eliminate her position <u>prior to October 2008</u>. As a result, all of Plaintiff's claims have been released and the Complaint must be dismissed in its entirety as a matter of law.

Specifically, Plaintiff's Complaint asserts the following claims, all of which have been released under the Separation and Release Agreement:

(1) Plaintiff asserts a race discrimination claim under Section 1981 alleging that "[w]hite employees who have left the company in similar positions have not faced the extent of restrictions [Plaintiff] has." (Complaint at ¶ 13.) This claim arises out of the terms of the Non-Competition Agreement that Plaintiff was required to sign as a condition of employment in October 2004, four years prior to her termination on October 13, 2008.

(2) Plaintiff asserts a tortious interference with contract claim alleging that the terms of the Non-Competition Agreement – under which Plaintiff acknowledged that she would have "knowledge and access to Proprietary and Confidential Information" – were "false" or "falsely expanded," and "interfered with [Plaintiff's] ability to obtain work with [Defendant's] competitors." (Complaint

at ¶¶ 11, 15.) Again, this claim arises out of the terms of the Non-Competition Agreement she signed in October 2004, four years prior to her termination on October 13, 2008.

(3)     Plaintiff asserts a race discrimination claim under Section 1981 based on her termination due to the elimination of her position.[2] There is obviously no dispute that Defendant decided to eliminate Plaintiff's position prior to her termination on October 13, 2008.

(4)     Plaintiff asserts a breach of contract claim, also based on her termination due to the elimination of her position.[3] Again, there is obviously no dispute that Defendant decided to eliminate Plaintiff's position prior to her termination on October 13, 2008.

Plaintiff admits that she signed an agreement "as part of the termination process." (Id. at ¶ 7.) That agreement, the Separation and Release Agreement, contained a clear and unmistakable waiver of any potential claims, including discrimination claims, that Plaintiff might make arising out of her employment with Defendant or her termination therefrom:

> 10. Release. *In exchange for the payments and benefits you will received under this Agreement, you hereby irrevocably and unconditionally waive,* release, acquit and forever discharge *the Company* and each of its respective current, former or future officers, directors, employees...*from any and all claims,* liabilities, damages, actions, causes of action and suits, whether known or unknown, which you now have...or which at any time heretofore,

---

[2]     Plaintiff alleges in the Complaint that her employment was "terminated because of racially discriminatory misconduct." (Complaint at ¶ 8.) Specifically, Plaintiff claims that Defendant selected her position for elimination improperly and "in order to preserve the employment of a white male employee." (Id.) Based on these allegations, Plaintiff claims that her employment was terminated based on "racial discrimination" in violation of 42 U.S.C. § 1981. (Complaint, p. 1.)

[3]     Plaintiff claims that the alleged racial discrimination constituted a breach of the Non-Competition Agreement. (Complaint at ¶ 7.) However, Plaintiff fails to identify any terms of the agreement which were allegedly breached.

had…or which you at any time hereafter may have…*based upon, arising out of or in connection with any circumstance, matter or state of fact up to the date of this agreement, including without limitation those based upon or arising out of the termination of your employment and other relationships with the company*, your compensation while employed by the company…and any of the Company's policies, procedures or requirements. *This release includes*, but is not limited to, *any claims for* breach of contract, wrongful termination or…*race…discrimination under…federal, state or local laws* prohibiting such discrimination or under any other federal, state or local employment laws.

(Separation and Release Agreement at ¶ 10) (emphasis added).

Furthermore, there is no indication that Plaintiff's release was involuntary or that she did not know and/or understand what she was agreeing to. The general release in Paragraph 10 emphasizes the following notice and acknowledgement, in capital letters:

> YOU UNDERSTAND THAT YOU HAVE BEEN ADVISED TO SEEK THE ADVICE OF AN ATTORNEY, IF YOU SO CHOOSE, PRIOR TO SIGNING THIS RELEASE AND TO THE EXTENT DESCRIBED HEREIN YOU ARE GIVING UP ANY LEGAL CLAIMS YOU HAVE AGAINST THE COMPANY . . . BY SIGNING THE RELEASE. YOU FURTHER UNDERSTAND THAT YOU HAVE 21 DAYS TO CONSIDER THIS AGREEMENT [AND] THAT YOU MAY REVOKE IT AT ANY TIME DURING THE SEVEN DAYS AFTER YOUR SIGN IT . . . YOU ACKNOWLEDGE THAT YOU ARE SIGNING THIS RELEASE KNOWINGLY, WILLINGLY AND VOLUNTARILY IN EXCHANGE FOR THE PAYMENTS AND BENEFITS DESCRIBED IN THIS AGREEMENT.

(Id.) Plaintiff signed the general release and did not revoke it within the seven days thereafter.

It is well established that "[a] valid release which is clear and unambiguous on its face[,] . . . even one relinquishing a discrimination claim[,] will be enforceable so long as the agreement has been knowingly and voluntarily entered into." Lambertson v. Kerry Ingredients, Inc., 50 F. Supp. 2d 163, 168 (E.D.N.Y. 1999); see also Cordoba v. Beau Dietl & Assocs., 2003 U.S. Dist. LEXIS 22033, at *12 (S.D.N.Y. Dec. 8, 2003) ("Under Title VII, an employee may validly

waive a discrimination claim so long as the waiver is made knowingly and voluntarily") (citing Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974) and Bormann v. AT&T Communications, Inc., 875 F.2d 399 (2d Cir. 1989)).[4]

Plaintiff alleges that Defendant "elected to downsize Ms. Cardwell [sic] sometime just prior to October 2008." (Complaint at ¶ 5.) Plaintiff executed the Separation and Release Agreement following her termination on October 13, 2008. (Separation and Release Agreement, p. 5.) Given Plaintiff's knowing and voluntary relinquishment of all of her actual and/or potential claims against the Defendant[5] – expressly including all claims of discrimination – this clear and unambiguous general release precludes Plaintiff from asserting any claims against the Defendant which arise out of any matters that predate the Separation and Release Agreement. See Pampillona v. RJR Nabisco, Inc., 138 F.3d 459, 463 (2d Cir. 1998) (affirming dismissal of complaint based on unambiguous release that was knowingly and voluntarily entered into); Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397, 401 (S.D.N.Y. 2002) (granting motion to dismiss discrimination complaint where there were no allegations to suggest plaintiff did not knowingly and voluntarily release claims); Laramee v. Jewish Guild for the Blind, 72 F. Supp. 2d 357, 359-62 (S.D.N.Y. 1999) (granting motion to dismiss discrimination claims where

---

[4]    New York courts also require that a release agreement be entered into knowingly and voluntarily, but apply general contract principles rather than the federal court's "totality of circumstance" test. See Skluth v. United Merchants & Mfrs., Inc., 163 A.D.2d 104, 106, 559 N.Y.S.2d 280, 281-82 (1st Dep't 1990). Under this test, "as long as the language of the release agreement is clear, courts will give effect to the intent of the parties as evidenced by that language." Livingston v. Bev-Pak, Inc., 112 F. Supp. 2d 242, 249 (N.D.N.Y. 2000) (citing Goode v. Drew Bldg. Supply, Inc., 266 A.D.2d 925, 997 N.Y.S.2d 417 (4th Dep't 1999)).

[5]    Having failed to assert that her execution of the Separation and Release Agreement was not knowing and voluntary, it is unnecessary for this Court to examine the "totality of the circumstances" to determine whether her "waiver [was] knowing and voluntary." Sheridan v. The McGraw-Hill Companies, 2001 U.S. App. LEXIS 25197, at *5 (2d Cir. Nov. 30, 2001). Nothing pled in the Complaint raises any question as to whether her execution of the Separation and Release Agreement was anything but knowing and voluntary. See Matusovksy, 186 F. Supp. 2d at 401 (granting motion to dismiss where no allegations to suggest general release was invalid); Lambertson, 50 F. Supp. 2d at 169 (granting dismissal in absence of allegations indicating that general release was not entered into knowingly and voluntarily).

plaintiff entered into unambiguous release knowingly and voluntarily); Lambertson v. Kerry Ingredients, Inc., 50 F. Supp. 2d 163, 169-70 (E.D.N.Y. 1999) (upholding clear and unambiguous release of discrimination claims and granting motion for judgment on the pleadings); Gant v. Brooklyn Dev. Ctr., 307 A.D.2d 307, 308, 762 N.Y.S.2d 507, 507 (2d Dep't 2003) (reversing denial of motion to dismiss where plaintiff voluntarily entered into agreement which released claims against former employer).

As discussed above, all of Plaintiff's claims arise from facts and circumstances that existed prior to her signature of the general release. As a result, all of Plaintiff's claims have been released and the Complaint must be dismissed in its entirety as a matter of law.

## POINT II

### PLAINTIFF'S SECTION 1981 CLAIM BASED ON THE DEFENDANT'S REQUIREMENT THAT SHE SIGN THE NON-COMPETITION AGREEMENT IS TIME-BARRED

Section 1981 claims are subject to a four-year statute of limitations period. See Jones v. R.R. Donnelly & Sons Co., 541 U.S. 369, 382-83 (2004) (applying four-year statute of limitations to Section 1981 claim). Plaintiff's Complaint was filed on or about September 10, 2009, and therefore, any claims of discrimination accruing prior to September 10, 2005 are clearly time-barred under Section 1981.

Plaintiff alleges that unidentified "[w]hite employees who have left the company in similar positions have not faced the extent of restrictions [Plaintiff] has." (Complaint at ¶ 13.) As reflected in the Non-Competition Agreement, Defendant required Plaintiff to sign the Non-Competition Agreement as a condition of employment upon her hire in October 2004. (Non-Competition Agreement, p. 3.) Thus, any claim by Plaintiff that Defendant imposed the non-competition restrictions on Plaintiff for racially discriminatory reasons arose from actions dating

back to October 2004, well outside the four-year limitations period. As a result, Plaintiff's

Section 1981 claim arising from Defendant's requirement that she sign the Non-Competition

Agreement is time-barred and should be dismissed.

### POINT III

### PLAINTIFF'S TORTIOUS INTERFERENCE
### WITH CONTRACT CLAIM IS UNTIMELY

Under New York law, a claim for tortious interference with contract is subject to a three

year statute of limitations period. See Thome v. The Alexander & Louisa Calder Fdn., 890

N.Y.S.2d 16, 30 (1st Dep't 2009); Buller v. Giorno, 28 A.D.3d 258, 258-59 (1st Dep't 2006).

The limitations period begins to run "when the defendant performs the action (or inaction) that

constitutes the alleged interference . . . [and] does not commence anew each time the plaintiff is

unable to enter into a contract . . . ." Thome, 890 N.Y.S.2d at 30.

Here, Plaintiff asserts a tortious interference with contract claim alleging that the terms of

the Non-Competition Agreement – under which Plaintiff acknowledged that she would have

"knowledge and access to Proprietary and Confidential Information" – were "false" or "falsely

expanded," and "interfered with [Plaintiff's] ability to obtain work with [Defendant's]

competitors." (Complaint at ¶¶ 11, 15.) Plaintiff further alleges that the Defendant engaged in

this interference "in order to unlawfully [obtain] a competitive advantage." (Complaint at ¶ 15.)

Thus, Plaintiff's tortious interference claim accrued when she signed the Non-

Competition Agreement in October 2004, which restricted Plaintiff's ability to work for

Defendant's competitors during her employment and for 12 months after termination.

Accordingly, Plaintiff's tortious interference with contract claim is time-barred and should be

dismissed.

## CONCLUSION

For all these reasons, defendants respectfully submit that the Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim.

Dated: February 8, 2010
        Jericho, New York

**NIXON PEABODY LLP**

/s/ Tara Eyer Daub

By:_____
    Tara Eyer Daub (TE-7943)

50 Jericho Quadrangle, Suite 300
Jericho, New York 11753-2728
(516) 832-7500

*Attorneys for Defendant*
*Thermo Fisher Scientific Inc.*